UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No: 2:12 CR 10 |
| | ) | |
| JOSEPH B. MILLER | ) | |

## ORDER AND OPINION

This matter is before the court for disposition of defendant Joseph B. Miller's amended motion for a new trial pursuant to FED. R. CRIM. P. 33 (DE #81). This comes following an evidentiary hearing thereon held on May 21, 2014, at which time Miller called witnesses and presented evidence in support of his motion. Under RULE 33, the court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM P. 33(a). Miller's motion is grounded on a claim that his conviction at trial resulted from ineffective assistance of trial counsel. Thus, he must meet the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), and show that his counsel's performance was unreasonable under prevailing professional norms, and that the deficiency caused him prejudice. *See United States v. Westmoreland*, 712 F.3d 1066, 1079-80 (7th Cir. 2013).

First,[1] defendant Miller argues that his trial counsel, Adam Tavitas, was ineffective for failing to make a confrontation clause objection to testimony at trial by

---

[1] The first argument in defendant's amended motion concerned his attorney's failure to present a plea offer to him for consideration. In his reply in support of his motion, he elected to withdraw this argument since he would not accept the offer even if the government agreed to renew it. (DE #85 at 1.)

Special Agent Michael Peasley identifying Miller's vehicle as being near the scene of the bank robbery at issue. At trial Agent Peasley testified that by working with the Lake County HIDTA[2] program and "playing with" video from a surveillance camera located at Amtech Technology Systems, a business near the bank, he had been able to determine every digit of the license plate number on the vehicle except the last. (DE #77 at 29-33.)[3] Then, using the Illinois vehicle registration database and a process of elimination, he found a registered vehicle of a make and model—a Ford Explorer—which was what the vehicle in the surveillance video appeared to be. (*Id*.)

Defendant Miller's argument now is based on a document turned over by the government in pretrial disclosures[4] titled "working copy" prepared by an unknown author. The document states that HIDTA staff "conducted an image refinement" of a still image from the video and "contacted Agents to indicate they had obtained the license plate from the video and could see it was L42 9151, Illinois." (DE #85-1 at 8.)[5] Relying on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), defendant Miller argues

---

[2] "HIDTA" is the acronym for a High Intensity Drug Trafficking Area.

[3] Citations to the court's record, including the transcript of trial, will be by CM/ECF docketing number and page number assigned by the CM/ECF system, not the document's own internal page.

[4] The document is attached to defendant Miller's reply memorandum, DE #85-1 at 8.

[5] It should be noted that the author of the document has not been identified, and it is possible that it simply contains a somewhat confused explanation of the steps Agent Peasley took in conjunction with HIDTA to obtain digits from the license plate and home in on Miller's vehicle.

2

that attorney Tavitas was ineffective for failing to make a confrontation clause violation objection to Agent Peasley's testimony because the person who enhanced (that is, conducted the "image refinement") of the still from the video and reported the license number, and the person who prepared the "working copy" document, are unknown and did not testify. (DE #81 at 15.)

Unlike *Melendez-Diaz*, no confrontation clause violation occurred in the present case. In *Melendez-Diaz*, affidavits of analysts at the state forensic laboratory were admitted into evidence to establish that bags of powder seized from defendant Melendez-Diaz contained cocaine. Unlike that case, as Miller himself admits in his motion, DE #81 at 14-15, the enhanced photograph from the surveillance video was not offered nor admitted into evidence.[6] Neither was the "working copy" document attached to his motion showing that HIDTA had identified the license numbers, nor was there any testimony concerning that document or indicating that someone at HIDTA had determined the license number. Thus, there was no confrontation clause violation to which trial counsel could or should have made an objection.

This is possibly why, in his reply memorandum and during the evidentiary hearing on his motion, defendant Miller's argument seems to have "morphed" into one that the document should have been used by Tavitas during his cross examination of

---

[6] Still images from the surveillance video showing Miller's vehicle were admitted into evidence as group exhibit 4F, but these were images which had been pulled from the video by an Amtech employee, Daniel J. Engelbrecht, who testified and authenticated them at trial. (DE #75 at 181-82.)

3

Agent Peasley to cast doubt on Peasley's explanation of how he had determined the vehicle in the video was Miller's. This argument fares no better, however, because no plausible explanation has been offered or is obvious as to exactly what this cross-examination should have been and how it would have made a difference to the outcome.

To the contrary, at the hearing on defendant Miller's motion Agent Peasley reiterated, consistent with his testimony at trial, the steps he had taken to use the surveillance video to identify Miller's vehicle. At the hearing he testified that the enhanced still image[7] used by HIDTA to determine the license number still wasn't clear enough, in his opinion, to be a "smoking gun" to identify the vehicle as Miller's and that he would characterize the information obtained from HIDTA as a tool he used to take the next steps. Those steps were using the Illinois vehicle registration database[8] to determine a vehicle of the make and model seen in the video, a Ford Explorer registered to defendant Miller, then going to Miller's residence to view the vehicle and see that it

---

[7] It bears noting that Agent Peasley did not agree with use of the term "enhance" in regard to HIDTA's treatment of the photograph. His understanding was that HIDTA had not used special software or changed the photograph in any way, but merely used ordinary Microsoft programs to change the contrast and colors, for example, to try to see the license numbers more clearly. This appears to explain his testimony at trial (DE #77 at 31) that no enhancements were made.

[8] It could be seen in the video that the vehicle had front and rear plates, unlike Indiana, which requires only rear plates, white in color, like Illinois. (DE #77 at 30.)

had unique characteristics matching the one in the surveillance video, such as stickers on the windows.[9]

Finally, at the hearing on Miller's motion his trial attorney, Adam Tavitas, testified that from preparing the defense he expected that both Miller's girlfriend and mother would testify that the vehicle in the surveillance video was Miller's Ford Explorer, and that Miller himself agreed that the video showed his vehicle. The defense he wanted Tavitas to pursue was that the person seen in the video exiting the vehicle was not him. In fact, Agent Peasley testified at trial that the first time he questioned Miller he showed Miller an image from the surveillance video and Miller said; "That's my vehicle, but that's not me." (DE #77 at 52.) Under all of the circumstances just summarized, Tavitas didn't see the "working copy" document stating that someone at HIDTA had identified the license number as having any special significance in the case, because it simply wasn't of great importance to show how the agents had gotten from the video to Miller's vehicle. Defendant Miller has not shown how Tavitas's judgment and performance in this regard was deficient, or how Tavitas could have utilized the document to make any difference in the case. He has not, therefore, made any showing of ineffective assistance of counsel.

Defendant Miller's second argument is that attorney Tavitas should have cross-examined Agent Peasley at trial concerning a portion of Peasley's affidavit in support of

---

[9] At trial Peasley testified that he also observed matching characteristics such as a license plate frame, a chrome, as opposed to body-colored, bumper, some windows tinted and some not, and after-market rain blockers. (DE #77 at 32-34; 41-42.)

the criminal complaint in this case, in which Peasley recounted having shown a photo line-up to Judith Tauber, a bank teller and eyewitness. Miller asserts that evidence shows that Peasley misrepresented in the affidavit that Tauber had identified a photo of defendant Miller as being the bank robber. Oversimplifying in the interest of brevity, Miller argues this would have made a difference at trial because Agent Peasley testified that during his initial custodial questioning of defendant Miller, Miller admitted committing the robbery.[10] Showing that Peasley was willing to mischaracterize an eyewitness's statement or, at best, was unable to accurately recall and describe the statement, would have minimized or negated the value of Peasley's testimony that Miller confessed.

Miller has not shown that Tavitas's decision not to pursue this matter at trial was deficient. To begin, the court views the evidence that Agent Peasley mischaracterized Tauber's statement to be lacking and not likely to have been of persuasive value to the jury. What occurred is this. The portion of Agent Peasley's affidavit at issue, paragraph 11, states:

> On December 21, 2011, law enforcement showed a photo line-up containing a photo of Miller and five other subjects to the teller. She pointed to the photo of Miller and said, "He looks familiar to me." The teller explained that when she was being robbed, she thought the man

---

[10] Peasley testified that at first Miller stated "I can't cop to a robbery," DE #77 at 54, but only a few minutes later said "I did not have a gun." *Id*. at 55. Peasley understood this to mean that Miller was admitting to the robbery, so he asked Miller if Miller meant that he did not have a gun during the robbery. Miller answered "yes." *Id*. at 56.

reminded her of a courier who comes into the bank. When she saw the photo of Miller, she again thought the photo reminded her of the courier.

(DE #1 at 5, ¶ 11.) Later, Tauber, after reviewing Peasley's affidavit, Tauber was of the opinion that it misrepresented what she had said. She wanted to be clear that she had never said the photo in the line-up was, or reminded her of, the bank robber. What she thought and said was that the man in the photo reminded her of the courier. The bank robber had also reminded her of the courier.

When defendant Miller learned this,[11] he moved to take a deposition of Tauber prior to trial. (DE #26.) Opposing that motion, the government argued:

> During Defense Counsel's interview of the teller, she said she disagreed with the agent's report. Instead, she said that the photograph of the defendant looked familiar, *because* it reminded her of the courier, not because the photograph looked like the bank robber. Accordingly, the government expects her trial testimony to be – that she did not identify the photograph as the bank robber.

(DE #28 at 5.) The court denied the motion to take her deposition. (DE #29.) Tauber did not testify at trial because she died prior to its commencement.

At the hearing on Miller's motion for a new trial, Peasley testified that he does not believe his affidavit mischaracterizes what Tauber had said while viewing the photo line-up. He strived to be accurate, and believed he had made it "abundantly clear" in the affidavit (as well as in testimony before the grand jury) that Tauber had not identified the photo as the bank robber, but had said the bank robber reminded her of

---

[11] The government had arranged for Miller's trial counsel, at that time Paul Stracci, to interview the teller and the teller's supervisor on about August 14, 2012. (*See* DE #28 at 2.)

7

the courier, and the photo reminded her of the courier. Thus, he thought a person might infer from her statements that the courier could be the bank robber, or that Miller could be the courier, or that Miller could be the bank robber. Re-reading paragraph 11 of Peasley's affidavit in that light, it becomes clear that while its wording might be less than perfect, it does not misrepresent anything. Thus, when Tauber read it she saw the same inference that anyone might draw: that the bank robber and Miller both reminding her of the courier might mean that Miller was the bank robber, and she wanted to be clear she was not saying that the man in the photo, Miller, was the bank robber.

What this all boils down to then, is this: attorney Tavitas's decision not to inquire into this matter at the trial, far from being ineffective, was a sound tactical decision. As he explained at the hearing, because Tauber was deceased and would not testify, there would be no evidence at trial concerning her comments about the photo line-up and the robber and a person in the line-up both reminding her of the courier. Therefore, doing so would hurt, not help, Miller, because there was no eyewitness who would identify Miller as the bank robber.[12] Going into the matter would give the jury something it would otherwise not have, and allow the jurors to draw the obvious inference made by Agent Peasley and seen by Tauber, but which she would not endorse, that Miller could

---

[12] As things turned out, the teller supervisor, Pakama Hoffman, identified Miller at trial. (DE #75 at 130.) Attorney Tavitas testified at the hearing on Miller's motion for a new trial that came as a surprise because she had never identified Miller previously. This did not give him a good reason to inquire into the matter concerning Tauber, however, because that might simply bolster Hoffman's identification.

8

be the bank robber because both he and the robber reminded Tauber of the courier. Therefore, Tavitas's decision not to pursue this issue was a reasonable strategic decision, not a deficient performance.

Third, Miller argued that his trial counsel was ineffective for failing to call two witnesses to rebut the government's evidence that he was having financial problems and therefore had a motive to commit the robbery. At trial, Doug Eveleigh, the assistant general counsel for Solo Cup Company, testified that the last day Miller came to work was the night of December 13, 2011 (the day of the robbery) and that he was then terminated on January 5, 2012. (DE #77 at 8.) Miller asserted in his motion that Patricia Lucit, a human resources employee at Solo Cup, would have testified that he was employed there full-time and was authorized to be absent from work due to an injury starting on December 13, 2011, and was only terminated because he failed to appear at work due to his arrest for the bank robbery; and that Sheree Wilks, a supervisor at Solo Cup, would also have testified concerning his full-time employment status, and in addition that he made money from a second job selling purses.

He called both of these witnesses at the hearing on his motion. The testimony of neither of them supports his assertions. Lucit testified that there was a doctor's note in Miller's file excusing his absence from work starting on December 21st and after, but not before then. Thus, her testimony does not aid Miller's showing of ineffective assistance, because there is no evidence that his absence from work starting on December 14, 2011, the day after the robbery, was authorized. (*See* . DE# 77 at 63-64.)

Wilks testified only that on one occasion in the summer or fall of 2011, after her shift ended, she saw a group of employees gathered around Miller's vehicle, and she thought he was selling something and told him to stop. She did not know, however, if Miller was selling purses for compensation. At best, her testimony is cumulative of other testimony at trial, from Miller's girlfriend, that he made money working on cars and selling purses and shoes. (DE #75 at 208.) In sum, neither witness's testimony suggests that Miller would have gained anything of value by calling them at trial; therefore, his attorney's failure to call them was neither deficient nor did it cause him any prejudice.

Finally, and again going to his motive, Miller argues that his attorney was ineffective for not using Miller's bank records to disprove Agent Peasley's trial testimony that Miller's bank account was overdrawn by more than $700 on the day before and morning of the robbery, before being brought into the black with cash deposits that afternoon. At the hearing on the motion for a new trial, Agent Peasley admitted that his trial testimony was wrong, and that Miller's account was not overdrawn by more than $700. It was, however, overdrawn by a small amount.

The court accepts, for the purpose of Miller's argument, that Tavitas's performance on this issue was deficient; that is, Tavitas should have used the bank records to show that Miller was not overdrawn by more than $700. He was overdrawn, however, and so Tavitas's mistake is minor, going to degree rather than substance. In addition, Miller did make cash deposits to his account on the day of the robbery to

bring it back into the black, and paid his delinquent electric bill that same day. Beyond that, the evidence of Miller's guilt is quite strong: his vehicle was captured on surveillance video near the bank at the time of the robbery, and getting out of the vehicle was a person resembling him in build, and wearing shoes and a distinctive Chicago Bulls baseball cap[13] appearing to be like those known to be worn by him; the bank teller supervisor, Hoffman, made a courtroom identification of Miller as the robber; and Miller admitted to Agent Peasley that he had committed the robbery. In light of this substantial evidence, attorney Tavitas's probable error caused no prejudice to Miller, and so does not amount to ineffective assistance of counsel.

For the reasons explained above, defendant Miller has not demonstrated that his trial was tainted by ineffective assistance of defense counsel undermining this court's confidence in the jury's verdict by causing the court to think there is any reasonable possibility that the outcome might have been different. His amended motion for a new trial (DE #81, supplanting DE #62, which the clerk should term as moot) is, therefore, **DENIED**.

                                                  **SO ORDERED.**

Date: June 12, 2014

                                      s/James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT

---

[13] The cap was never recovered, but agents testified that during the investigation Miller's girlfriend told agents that Miller had one just like it. (DE #75 at 217; 221.) At trial she denied having told them this. (DE #75 at 211.)